UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| ALBERTO DELGADO,<br>      Plaintiff,<br><br>      v.<br><br>CUMBERLAND FARMS, INC.,<br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 24-cv-454-MRD-PAS |

## MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge.

Alberto Delgado brought the instant Complaint after he was fired from his job as a manager at Cumberland Farms. The Complaint (ECF No. 1-1) asserts three claims: (1) discrimination and retaliation on the basis of protected conduct, in violation of the Rhode Island Civil Rights Act of 1990 ("RICRA"), R.I. Gen. Laws § 42-122-1, et seq.; (2) retaliation and a hostile work environment, in violation of the Rhode Island Whistleblower Protection Act ("RIWPA"), R.I. Gen. Laws § 28-50-1, et seq.; and (3) discrimination and retaliation on the basis of protected conduct, in violation of the Rhode Island Fair Employment Practices Act ("RIFEPA"), R.I. Gen. Laws § 28-5-1, et seq. In essence, Delgado claims he was fired for reporting a coworker to management based on complaints that the coworker was allegedly sexually harassing female employees. Cumberland Farms filed a Motion for Summary Judgment on all claims, arguing that Delgado's termination came only after he violated Cumberland Farms' customer engagement policies. ECF No. 12 at 1-2. Specifically, the alleged violation

occurred during an incident where he engaged in a verbal confrontation with a customer, left his post at the store counter, and followed the customer towards his vehicle. For the following reasons, Cumberland Farms' Motion for Summary Judgment, ECF No. 11, is GRANTED on all three counts.

## I.    BACKGROUND

In June 2004, Mr. Delgado successfully completed Cumberland Farms' Manager in Training Program and at the end of his six-month training period, he became a store manager. Def.'s Statement of Undisputed Material Facts; ECF No. 13 ¶¶ 3–7. In 2014, he was assigned management of the Cumberland Farms on Reservoir Avenue, in Cranston, Rhode Island ("Reservoir Avenue Store"). *Id.* ¶ 6.

Fast forward to November 23, 2023: Delgado hired Carlos Santiago ("Santiago") to be a Guest Service Associate at the Reservoir Avenue Store. *Id.* ¶ 8. Their relationship started off great but began to deteriorate in early 2024 after Delgado began receiving complaints from fellow employees that Santiago was sexually harassing his female coworkers and making other staff members feel unsafe. *Id.* ¶¶ 9–12. Delgado's employees described Santiago's actions as "creepy," "argumentative," and "unsettling." ECF No. 19-4 ¶ 9. In accordance with his responsibilities, Delgado reported these complaints to his supervisor, district manager Tracie Durda ("Durda"), and expected that she would investigate the sexual harassment complaints. *Id.* ¶¶ 11, 14-15. Multiple employees reported Santiago's

sexual harassment to both Delgado and Durda.  Def.'s Resp. to Pl.'s Statement of Additional Undisputed Facts, ECF No. 22 at 7.

Around the same time when these complaints were being made about Santiago, Santiago had contacted Human Resources and requested to transfer stores because, in his view, "customers at the [Reservoir Avenue Store] were drug users and often used the bathroom for illegal activities" and that "employees would find needles, and condoms on the bathroom floor."  ECF No. 13 ¶¶ 13–14.  Santiago's transfer request was successful.  *Id.* ¶ 17.  Subsequently, however, on April 11, 2024, Santiago was terminated for theft.  *Id.* ¶ 21.

Eight days after his termination, on April 19, 2024, Santiago returned as a customer to the original Reservoir Avenue Store where he used to work with Delgado. ECF No. 13 ¶ 22.  Santiago was next in line to check out when Delgado invited Santiago to his register, but Santiago refused.  *Id.* ¶ 28.  After the two exchanged words at the counter, Delgado requested that Santiago not return to the store because of past issues between Delgado and other employees.  *Id.* ¶ 30; *See* ECF No. 14-2 at 53 (Pl.'s Dep. 135:5–23).  As he was exiting the store, Santiago continued to make comments to Delgado which prompted Delgado to follow him out of the store. According to Delgado, he repeatedly advised Santiago that "it would be better for everybody [if Santiago did not] keep showing up over there."  ECF No. 13 ¶ 30. Delgado proceeded to follow Santiago out of the store, all of the way to his car, and then returned to the store once Santiago drove away.  *Id.* at 5–6.  Upon returning into the store, Delgado reported the incident to law enforcement and Durda.  *Id.* ¶ 40.

Less than two weeks later, on May 2, 2024, Cumberland Farms terminated Delgado's employment for "poor judgement and unprofessionalism" in violation of Cumberland Farms' "Handling Challenging Guests" and "General Rules of Conduct and Unprofessional Conduct policies." *Id.* ¶ 55. The "Handling Challenging Guests' Policy" states:

> Do not resist, fight, argue, provoke, follow or escort a challenging guest – never jeopardize your safety, or the safety of others, trying to protect Company property or fund . . . Never match the tonality or inappropriate language of a challenging guest. Remember that you are acting as a representative of the Company and keeping your composure will help de-escalate the situation . . . Please note that we cannot ban guests from our stores without following the proper internal process, which includes involving the police, submitting team member witness statements and a police report to your District Manager.

ECF No. 14-3 at 20–21. The "General Rules of Conduct and Unprofessional Conduct" states that disciplinary action, up to and including termination, may result from any "inappropriate or unprofessional conduct (verbal or physical) or the participation in any form of offensive or unlawful discriminating or harassing behavior toward another employee, an applicant, a customer, a vendor, or an invited guest of the Company." ECF No. 14-6 at 2–3. Between May 2021 and July 2024, Cumberland Farms terminated approximately 13 employees for violating the Challenging Guests policy and engaging in similar conduct. ECF No. 13 ¶ 56. Tellingly, Delgado, as a manager, has fired employees for violating this exact policy. ECF No. 12 at 9–10.

## II.    APPLICABLE STANDARD

"The court shall grant summary judgement if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "An issue is 'genuine' if a rational factfinder could resolve it in favor or either party, and a fact is 'material' if it has the capacity to change the outcome of the suit." *Rodríguez v. Encompass Health Rehab. Hosp. of San Juan Inc.*, 126 F.4th 773, 779 (1st Cir. 2025). In considering whether a genuine issue of material fact exists, the court must view the facts in the light most favorable to the party opposing summary judgment. *Rivera-Colon v. Mills*, 635 F.3d 9, 10 (1st Cir. 2011). However, "[u]nsupported allegations and speculation do not demonstrate either entitlement to summary judgment or the existence of a genuine issue of material fact sufficient to defeat summary judgment." *Id.* at 12.

## III.    DISCUSSION

The Court will begin with a discussion about Delgado's discrimination and retaliation claims under RICRA and RIFEPA and then move on to discuss the hostile work environment claim under the RIWPA.

### A. RICRA & RIFEPA

Delgado contends that he was discriminated and retaliated against when Cumberland Farms took adverse employment action against him for engaging in the protected conduct of reporting the sexual harassment complaints against Santiago, ECF No. 1 at 3–4. The parties agree that these claims should be analyzed under the *McDonnell Douglas* burden shifting framework. ECF No. 19 at 5; ECF No. 12 at 13. When "a plaintiff opposing summary judgment does not have direct evidence of

discrimination" or retaliation, the burden-shifting framework outlined in *McDonnell Douglas* is applied. *Joseph v. Lincare, Inc.*, 989 F.3d 147, 157 (1st Cir. 2021). The *McDonnell Douglas* burden-shifting framework first requires a plaintiff to establish a *prima facie* case of discrimination or retaliation. *Stratton v. Bentley Univ.*, 113 F.4th 25, 38, 42 (1st Cir. 2024). Then, "the burden swings to the defendant 'to articulate a legitimate, non-retaliatory reason for its employment decision.'" *Id.* at 42 (quoting *Abril-Rivera v. Johnson*, 806 F.3d 599, 608, n.10 (1st Cir. 2015)). Finally, if satisfied by the defendant's showing, "the burden travels once more to the plaintiff to show that the reason is pretext and that retaliatory animus was the real motivating factor." *Abril-Rivera*, 806 F.3d at 608 n.10.

### 1.    Whether Delgado has established a prima facie case of retaliation and discrimination.

To establish a *prima facie* case of discrimination, Delgado must "establish that [he] was a member of a protected class, that [he] was qualified for the job,[1] that [he] suffered an adverse employment action, and that the adverse employment action transpired under circumstances giving rise to an inference of discrimination." *Ripoli v. Dep't of Hum. Servs., Off. of Veterans Servs.,* 123 F.4th 565, 571 (1st Cir. 2024). Similarly, to establish a *prima facie* case of retaliation, Delgado must establish, through direct or circumstantial evidence, "that (1) []he engaged in protected activity;

---

[1] This Court finds that Delgado was qualified for the role because he worked in the store manager role for Cumberland Farms for almost twenty years. *Jones v. Cao*, C.A. No. 22-cv-418-JJM-AEM, 2026 WL 1660401, at *2 (D.R.I. June 9, 2026) (finding that the plaintiff was qualified for role as a Naval computer scientist as a Navy Veteran with a Ph.D., two MBAs, and an Engineering level 3 certificate).

6

(2) []he suffered some materially adverse employment action; and (3) the adverse action was causally linked to h[is] protected activity. *Doe v. Town of South Kingstown by and through Saul*, 762 F. Supp. 166, 176 (D.R.I. 2025).

### a.    Protected Conduct

Delgado satisfies the first element because he engaged in protected conduct by reporting the sexual harassment complaints against Santiago to management.  ECF No. 19 at 7; *see Doe*, 762 F. Supp. 3d at 176 (finding that reporting alleged sexual harassment constitutes a protected activity).

### b.    Material Adverse Action

The next question is whether Delgado suffered a materially adverse action. Cumberland Farms terminated Delgado thirteen days after reporting the April 19 incident with Santiago to law enforcement and management.  ECF No. 19 at 7.  This constitutes an adverse employment action.  *See Thompson v. Coca-Cola Co.*, 522 F.3d 168, 176 (1st Cir. 2008) (stating that termination is an adverse employment action).

### c.    Causal Link

The final element of the prima facie case is the most disputed of the three. Delgado asserts that the close timing between the protected activity and the termination supports an inference of retaliation.  ECF No. 19 at 7.  He also argues that he was treated differently from other employees who were terminated for violating the same company policies and differently from Durda who he claims violated company policy by not investigating the sexual harassment allegations against Santiago.  *Id.* at 7–10.  Cumberland Farms maintains that Delgado was not

terminated for engaging in a protected activity, ECF No. 12 at 4–5, and that he was terminated only after he engaged in a verbal confrontation with a customer (Santiago), came from behind the counter, exited the store, and followed Santiago towards his car in the parking lot. Delgado's conduct, Cumberland Farms argues, put himself, Santiago, and other employees at risk, which is what the policies are designed to prevent. ECF No. 11 at 12. As further support, Cumberland Farms points to the fact that it has terminated thirteen other employees for this type of conduct, and Delgado himself has terminated people for this reason. ECF No. 12 at 8–10.

While Cumberland Farms asserts facts that support the termination not being causally linked to Delgado's protected activity, the court must view the evidence in light most favorable to Delgado and draw all reasonable inferences in his favor. *Planadeball v. Wyndham Vacation Resorts, Inc.*, 793 F.3d 169, 174 (1st Cir. 2015). Therefore, at this stage, Delgado has satisfied element three and established a prima facie case of retaliation and discrimination.

### 2. Whether Cumberland Farms has a legitimate, non-retaliatory reason for the termination.

Finding that Delgado has established prima facie cases of discrimination and retaliation, the Court moves to the next part of the *McDonnell Douglas* burden shifting framework. Cumberland Farms must establish a "legitimate, non-retaliatory" reason for the termination. *Calero-Cerezo v. U.S. Dept. of Just.*, 355 F.3d 6, 26 (1st Cir. 2004). Again, Cumberland Farms relies on the fact that Delgado was

terminated for violating company policies on April 19, 2024 when he put himself, Santiago, and other employees at risk.  ECF No. 12 at 14.

Both parties concede that Delgado exited the store and confronted Santiago in the parking lot, despite asserting differing reasons for doing so.  Cumberland Farms' policy on Challenging Guests is clear and explicitly instructs employees to not "follow or escort a challenging guest [and] never jeopardize your safety, or the safety of others." ECF No. 19-3 at 12.  The policies do not require a physical altercation to take place, and the simple act of following a customer out of the store is sufficient to trigger the policy.   Out of the thirteen other employees that were terminated for "challenging" guests, the common thread between them all is that an employee came from behind the counter and pursued a customer.  *Id.* at 14-15.

In response to this, Delgado suggests that Cumberland Farms typically applies the policies to physical altercations and employees pursuing suspected shoplifters, and that those situations are not the same as the present incident.  *Id.* at 15.  Still, Delgado's interpretation is belied by the facts and the plain language of the policy. By Delgado voluntarily following Santiago out of the store and towards Santiago's car at a gas pump, he put himself and others at risk, a clear violation of company policy. Delgado's behavior could have led to a physical altercation, and that is what the policy protects against—situations escalating into physical confrontations.

It is clear that Delgado violated company policy, and that Cumberland Farms has met its burden of showing a legitimate non-retaliatory reason for Delgado's

9

termination. Next, the Court will analyze whether Cumberland Farms' justification for the termination was pretextual.

### 3. Whether Cumberland Farms' reason is mere pretext.

The final element of the burden shifting framework requires Delgado to show that the proffered reason was mere pretext. *Stratton*, 113 F.4th at 42. "When analyzing employment discrimination claims under RICRA and FEPA … Rhode Island courts routinely apply the test for discrimination claims utilized for Title VII claims." *Reilly v. Cox Enter., Inc.*, No. CA 13-785S, 2014 WL 4473772, at *11 (D.R.I. April 16, 2014). "The Supreme Court recently held as to Title VII retaliation claims that … a plaintiff making a retaliation claim … must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.'" *Ponte v. Steelcase Inc.*, 741 F.3d 310, 321 (1st Cir. 2014) (quoting *University of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). "The pretext inquiry focuses on the employer, and whether the employer believed that its stated reason for the termination was credible." *Id.* at 323.

Delgado asserts the policy violation serves as pretextual reason for his termination, and that he was actually terminated for reporting sexual harassment complaints and criminal threats to his manager. ECF No. 19 at 5–6. To support his pretext argument, Delgado explains that the close timing between the protected activity and termination should support an inference of retaliation. *Id.* at 7. However, in *Planadeball v. Wyndham Vacation Resorts, Inc*, the First Circuit stated that timing by itself is not enough to raise an inference of pretext. 793 F.3d at 179.

In that case, the plaintiff also used temporal proximity between her formal complaints and threats of termination made by a company employee as a justification for causation. *Id.* at 176-177. As the Court concluded, the only evidence presented to support an inference of pretext was temporal proximity and rejected the argument because, in the context of other evidence presented, the timing of the threats made sense. *Id.* at 179. That same conclusion dooms Delgado's claims.

It is insufficient for Delgado to simply challenge Cumberland Farms' proffered reason, as "a plaintiff must proffer specific facts that would enable a reasonable factfinder to conclude that the employer's reason for termination was a 'sham' intended to cover up the employer's true motive." *Ponte*, 741 F.3d at 323. Here, the record lacks any specific facts that Cumberland Farms' decision to fire Delgado for violating company policy was actually a pretext for a discriminatory reason. Aside from temporal proximity, Delgado has not pointed to any facts in the record that suggest Cumberland Farms terminated him with a discriminatory-based animus. As for the temporal proximity, the Court is not persuaded because there is no evidence or non-conclusory statement showing that Durda or Cumberland Farms based the termination on his protected conduct when deciding to take their adverse employment action.

Delgado's next attempt at establishing that Cumberland Farm's termination decision was a pretext is that he was not treated consistently with other employees or Durda. ECF No. 19 at 7; ECF No. 19-3 ¶¶ 56–57. Specifically, he relies on "[t]he rationale [] that if an employer has a policy or procedure that governs a specific

11

situation but fails to adhere to the same in taking an adverse employment action …

then it might be inferred that the reason articulated for taking the adverse

employment action against the employee was not true." *Id.*; *Rodríguez-Cardi v. MMM*

*Holdings, Inc.*, 936 F.3d 40, 50 (1st Cir. 2019).  Citing the First Circuit, Cumberland

Farms argues that "[t]he Court should not act as a 'super-personnel department'

when reviewing Cumberland Farms' decision to terminate Plaintiff for placing

himself in danger by confronting a customer in the parking lot."  ECF No. 12 at 12

(citing *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991)).  It points to the

evidence that 13 other employees were terminated for engaging in the same conduct

for which Delgado was terminated, while Delgado argues that those are not fair

comparators because he did not engage in a physical interaction with Santiago.  ECF

No. 13 at 10; ECF No. 19 at 7.  The discrepancies in the comparators, however, are

not material.  The Court finds that the policies were clear and that Delgado's decision

to confront and follow Santiago undoubtedly violated the policy.

Delgado also argues that "[Cumberland Farm's] selective enforcement of its

own policies demonstrates that it terminated [him] illegally" as evidenced by their

failure to terminate Durda for not properly investigating the sexual harassment

complaints.  ECF No. 19 at 9.  The record does not support this argument.  Further,

"[t]he anti-discrimination laws do not insure against inaccuracy or flawed business

judgment on the employer's part; rather, they are designed to protect against, and to

prevent, actions spurred by some discriminatory animus."  *Kouvchinov v. Parametric*

*Tech. Corp.,* 537 F.3d 62, 67 (1st Cir. 2008).

12

"Mere questions regarding the employer's business judgement are insufficient to raise a triable issue as to pretext." *Pearson v. Mass. Bay Transp. Auth.*, 723 F.3d 36, 41 (1st Cir. 2013).

This Court heeds the First Circuit's instructions and declines to adopt the role of a super personnel department. While there may be questions about Durda's investigation, or lack thereof, one thing is clear to this Court: Cumberland Farms' reason for terminating Delgado was not a pretext. Accordingly, as a matter of law, he cannot prevail on his retaliation and discrimination claims under the *McDonnell Douglas* burden shifting framework.

\* \* \*

Since Delgado's RICRA and RIFEPA claims fail to survive the *McDonnell Douglas* burden shifting paradigm the Court grants Cumberland Farms' Motion for Summary Judgment on Counts I and III. The Court now moves on to Delgado's hostile work environment claim under RIWPA.

### B.   RIWPA

Delgado's remaining claim asserts that he was subjected to a hostile work environment because of his protected conduct, eventually leading to his termination, in violation of the RIWPA. Specifically, he argues that "[w]hen Santiago later returned to the store and threatened [Delgado] with physical harm, that confrontation was not an isolated event; it was the direct consequence of the same pattern of misconduct [Delgado] had been reporting, and Durda ignored." ECF No. 19 at 10. Arguing in favor of summary judgment, Cumberland Farms suggests that

13

Delgado's termination is a discrete act (being terminated), and that if not, the allegations still do not meet the standard for hostile work environment because there is no evidence that Delgado is part of a protected class or that the conduct is sufficiently severe or pervasive.  ECF No. 12 at 17.

To show he was subjected to a hostile work environment, Delgado must establish: (i) he is a member of a protected class; (ii) he was subject to harassment; (iii) the harassment was based on his membership in a protected class; (iv) the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and create an abusive work environment; (v) the harassment was both objectively and subjectively offensive; and (vi) there exists some basis for employer liability.  *Flood v. Bank of Am. Corp.*, 780 F.3d 1, 10 (1st Cir. 2015).  In making his claim for a hostile work environment, Delgado "must demonstrate, inter alia, that the complained-of conduct was so severe or pervasive that it altered the terms or conditions of [his] employment."  *Pomales v. Celulares Telefonica, Inc.*, 447 F.3d 79, 83 (1st Cir. 2006).  The hostile conduct that occurred "must be 'both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and [the plaintiff] in fact did perceive it to be so.'"  *Maldonado-Cátala v. Municipality of Naranjito*, 876 F.3d 1, 10 (1st Cir. 2017) (quoting *Pérez-Cordero v. Wal-Mart P.R., Inc.*, 656 F.3d 19, 27 (1st Cir. 2011)).  When analyzing the evidence, the Court recognizes that "[t]here is no 'mathematically precise test' to determine whether plaintiff present[s] sufficient evidence [to show] that he was subjected to a severely

14

or pervasively hostile work environment." *Kosereis v. Rhode Island*, 331 F.3d 207, 216 (1st Cir. 2003) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993)).

As to the first element—whether Delgado is part of a protected class— the Court finds that his sexual harassment reports to Durda and law enforcement constitute protected activity under RIWPA and make him a member of a protected class. *See* R.I. Gen. Laws §§ 28-50-2(4), 28-50-3(1).

Moving on to the second and third elements, Delgado needs to show he was subjected to harassment based on his status as a member of a protected class. This is where his claim fails. Simply put, as Cumberland Farms points out, "[t]he record is devoid of any evidence of a single comment or allegation concerning [Delgado's] membership to a protected class." ECF No. 12 at 19. The record establishes Delgado and other Cumberland Farms staff may have been uncomfortable with Santiago's criminal record or his "creepy" comments, but there is no evidence connecting Santiago returning to the store to Delgado's reports to Durda. And, as noted in *Senra v. Town of Smithfield*, "a plaintiff bringing a claim under [RIWPA] may not base the claim on 'pure speculation.'" 715 F.3d 34, 42 (1st Cir. 2013). Nothing in the record demonstrates that Delgado was the subject of harassment or that he endured any harassment based on his membership in a protected class.

Cumberland Farms has established that there are no genuine disputes of material fact to be resolved by the fact finder on the second and third elements of Delgado's hostile work environment claim. Therefore, this claim fails as a matter of

15

law and Cumberland Farms' request for Summary Judgment on Count II is GRANTED.

## IV.    CONCLUSION

For the foregoing reasons, Cumberland Farms' Motion for Summary Judgment is GRANTED on all counts.  Judgment shall enter in favor of the Defendant, and the clerk is directed to close this case.


IT IS SO ORDERED.

_____
Melissa R. DuBose
United States District Judge


07/31/2026